# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

G.M. SIGN INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons,

    Plaintiff,

v.

STEALTH SECURITY SYSTEMS, INC.,

    Defendants.

No. 14 C 09249

Judge John J. Tharp, Jr.

## MEMORANDUM OPINION AND ORDER

Plaintiff G.M. Sign, Inc. ("G.M. Sign") has moved for class certification in its suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant Stealth Security Systems, Inc. ("Stealth") argues that the class is not sufficiently ascertainable and that G.M. Sign is not a member of the proposed class. Because the class is sufficiently ascertainable and G.M. Sign is a member, the Court grants the motion for class certification with a modified class definition.

## BACKGROUND

The facts relevant to class certification in this case are relatively simple. G.M. Sign received an unsolicited fax advertising Stealth Security Systems' products on October 17, 2006. *See* Matiasek Dep. 22:5-7 (Apr. 20, 2016). Stealth had contracted with a company called Profax to send out faxes to a given list of customers twice in 2006.[1] The first distribution took place on March 1-2, 2006. *See* Pl.'s Ex. 1 at 36. It was sent to 21,291 fax numbers and successfully

---

[1] In a prior ruling, this Court held that the complaint in this action is not barred by the four-year statute of limitations applicable to TCPA claims because the statute was tolled for an extended period by a state court class action that was ultimately dismissed voluntarily in 2014 in favor of this suit. *See G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, No. 14 C 09249, 2015 WL 9268416 (N.D. Ill. Dec. 21, 2015).

received by 13,518. *Id.* A second distribution was sent out on October 17-18, 2006 to 50,267 fax numbers, of which 37,215 were successful. *Id.* at 37.

The original distribution lists, which would provide the numbers to which the broadcasts were sent, have not been uncovered. Stealth asserts in its response that those lists "simply no longer exist." Def.'s Resp. at 4. Another list, however, has been unearthed: a list of 1,747 fax numbers that requested that they be removed from the list. *See* Pl.'s Ex. 7 at 55-92. Each person on the opt-out list visited a website or called an automated telephone system and entered the five-digit customer ID number assigned to Stealth, which was provided at the bottom of the advertising fax. *See* Barnett Dep. 11:1-14 (Mar. 10, 2016). The list also provides when each person asked to be removed from the list; the vast majority of removals occurred shortly after the fax distribution.

## DISCUSSION

G.M. Sign initially proposed the following class definition:

> All persons who were successfully sent a fax advertisement from March 2006 through October 2006 that advertised the security services of "Security Alert[,]" "specializing in all your security needs" for whom Defendant, Stealth Security Systems, Inc. cannot prove evidence of prior express permission or invitation for the sending of such faxes.

To certify a class action, the plaintiff must meet the requirements of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). G.M. Sign has moved for class certification under Rule 23(b)(3), which also requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Stealth does not challenge whether any of these elements are met, and they plainly are met. Rather, Stealth contends that G.M. Sign's proposed class fails the "implicit requirement" of "ascertainability." *See Mullins v. Direct Digital, LLC*, 795 F.3d

2

654, 657 (7th Cir. 2015). Stealth argues this is true for three reasons: that G.M. Sign is not a member of the proposed class, that there is no objective method of identifying potential class members, and that the proposed class is not definite.

To begin, Stealth's contention that G.M. Sign is not a member of the proposed class is frivolous. G.M. Sign's fax number does not appear on the opt-out list, and from this non-evidence Stealth concludes that there is no "definitive means to establish that Plaintiff was a party to Stealth's fax broadcast campaign." Def.'s Resp. at 8. Most recipients of the fax, however, do not appear on the opt-out list, and the president of G.M. Sign testified in a deposition that his company received the fax at issue. Other circumstantial evidence, such as the fact that G.M. Sign's attorneys were able to attach a copy of the fax to their complaint and provide the copies at depositions, corroborates that testimony. Furthermore, the Seventh Circuit has approved testimony, such as affidavits, as a way of proving class membership in consumer protection cases. *See Mullins*, 795 F.3d at 669. G.M. Sign's testimony, which is effectively unrebutted, is sufficient for G.M. Sign to be considered a member of the potential class.

Stealth insists that the putative class is not ascertainable because there is no objective means of identifying—and therefore notifying—members of the class about this litigation. Without the fax list, which has not been located in discovery, Stealth maintains that there is no way to establish, by "precise, objective criteria," who the members of the class are. But this argument misapprehends the import of the requirement that a class be defined by reference to objective criteria. As the Seventh Circuit explained in *Mullins,* the ascertainability inquiry goes to "the adequacy of the class definition itself," not to "whether, given an adequate class definition, it would be difficult to identify particular members of the class." 795 F.3d at 658. A class definition satisfies the "objective criteria" standard if it is based on non-subjective criteria

3

that identify a particular group, harmed during a particular time frame, in a particular location, in a particular way. *Id.* at 660. G.M. Sign's class definition meets this standard: it defines the putative class as the group of persons who received during a specific time period fax transmissions from a specific party relating to specific services. There is no vagueness or subjectivity in this definition.

To the extent that Stealth argues that the proposed class is not ascertainable because there is no objective means of actually determining whether someone is a class member, that is not a basis to deny class certification. In *Mullins,* the Seventh Circuit expressly rejected the proposition that a proposed class fails the implicit ascertainability requirement of Rule 23 if, at the time of certification, the class representative has not established that there is a "reliable and administratively feasible" way to identify the members of the putative class. *Mullins,* 795 F.3d at 657-58. The Court of Appeals has instructed that questions about the feasibility of identifying members of the class are to be assessed in the context of Rule 23's superiority standard, which is not a stand-alone inquiry, but a relative assessment of the costs and benefits of proceeding as a class-action. And in making that relative assessment, the Seventh Circuit has told district courts that normally they should "wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known . . . . And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation." *Id.* at 664.

At this juncture, the problem does not appear to be insoluble. To begin, there is a list of over 1,700 individuals who in response to Stealth's fax advertisement requested not to be contacted. Even if no one beyond those individuals is ever identified, classes as small as forty people are sufficient to warrant class adjudication. *See Healey v. Int'l Bhd. of Elec. Workers, Local Union No. 134*, 296 F.R.D. 587, 592 (N.D. Ill. 2013) (collecting cases). Stealth contends

that there is no "definitive means of determining whether any of the numbers on the opt-out list received the subject fax without conducting an individualized inquiry," Def.'s Resp. at 5, but that again conflates the issues of the adequacy of the class definition and the means of proving a claim. And in any event, the fact that Stealth sent out two advertisements and within days hundreds of people requested to be removed using Stealth's assigned customer number provides adequate evidence that those numbers are more likely than not individuals who received the relevant fax. And again, evidence of receipt may be supplemented by other evidence, such as retained copies of faxes received, affidavits of receipt, evidence relating to fax machine ownership, or other facts that are probative of whether or not an individual received a fax described in the class definition.

Finally, Stealth also objects to the class definition as non-ascertainable because it defines a "fail-safe" class. A "fail-safe class" is one where "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Mullins*, 795 F.3d at 660. As proposed, G.M. Sign's class definition does constitute a fail-safe class, in that class membership would be predicated on Stealth's liability; only those to whom Stealth sent faxes without consent—that is, only those to whom Stealth would be liable—would be members of the class. But that problem is easily cured, and in its reply, G.M. Sign conceded that the Court could remove the phrase "for whom Defendant, Stealth Security Systems, Inc. cannot prove evidence of prior express permission or invitation for the sending of such faxes." Reply at 7. Accordingly, the Court modifies the class definition to eliminate the "permission or invitation" component. The class will be defined as: "All persons who were successfully sent a fax advertisement from March 2006 through October 2006 that advertised the security services of Security Alert."

A case relied on by Stealth, *Sadowski v. Med1 Online*, No. 07 C 02973, is instructive. There, Judge Aspen initially refused to certify a TCPA class which contained as a part of its definition that the "defendant cannot provide evidence of express consent or an established business relationship prior to the transmission of the faxes." *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 489360, at *3 (N.D. Ill. Feb. 20, 2008). This, the court reasoned, came too close to the language of the TCPA and would require an individual factual analysis of each class member. *Id*. Once that element was removed and the class was redefined as merely persons who received the relevant faxes, the class was approved. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *2 (N.D. Ill. May 27, 2008). The court found that whether the fax was unsolicited would need to be proven at trial and the given class was appropriate to adjudicate that issue.

The same is true here. G.M. Sign need not include the lack of consent in its class definition because it will need to prove at trial that the faxes were unsolicited. If that is proven, Stealth will still have the opportunity at the damages phase to remove class members who had consented or were existing business partners with Stealth. The class, as defined without the disputed clause, requires no individualized factual adjudication and is not defined by whether the class member would win a TCPA suit against Stealth. Thus, the Court removes the disputed clause from the class definition and otherwise grants the motion for class certification.

Dated: August 18, 2017

John J. Tharp, Jr.
United States District Judge